**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: | Case No.  15-cv-01173-JSW |
| TENDERLOIN HEALTH, | |
| Debtors. | **ORDER AFFIRMING BANKRUPTCY COURT** |
| | |
| BANK OF THE WEST, | |
| Appellant, | |
| v. | |
| E. LYNN SCHOENMANN, | |
| Appelle. | |

Now before the Court for consideration is the appeal filed by Bank of the West's ("BOTW") of the Bankruptcy Court's Order denying its motion for attorneys' fees in an adversary proceeding brought by Appellee, E. Lynn Schoenmann ("Trustee"), *Schoenmann v. Bank of the West*, AP No. 12-03171-HLB (the "Adversary Proceeding").  Pursuant to Civil Local Rule 16-4, the Court deems this case submitted on the papers without oral argument.

The Court has reviewed the parties' papers, the record on appeal, and relevant legal authority.  For the reasons set forth in this Order, the Court hereby AFFIRMS the Bankruptcy Court.

//

**BACKGROUND**[1]

The Court previously set forth the facts underlying this dispute in Orders issued in two related cases: *In re Tenderloin Health: E. Lynn Schoenmann v. Bank of the West*, 13-cv-03992-JSW and *In re Tenderloin Health: Bank of the West v. E. Lynn Schoenmann*, 13-cv-04585-JSW. (*See* Appellant's Excerpts of Record ("BOTW EOR") Tab W, Order Affirming Bankruptcy Court ("Affirmance Order") at 1:27-3:12; BOTW EOR Tab DD, Order Remanding to Bankruptcy Court for Further Proceedings ("Remand Order") at 2:2-4:3.)

In brief, the Trustee filed suit, pursuant to 11 U.S.C. section 547, to recover what she alleged was a preferential transfer (the "Debt Payment") from the debtor, Tenderloin Health ("Debtor") to BOTW.  On July 31, 2013, the Bankruptcy Court granted BOTW's motion for summary judgment.  (BOTW EOR, Tab F, Tentative Ruling on Motion for Summary Judgment ("SJ Tentative"); BOTW EOR Tab G, Order Granting Motion for Summary Judgment ("SJ Order").)  The Bankruptcy Court found that the Trustee could not meet her burden on her preference claim, because BOTW was able to show that it had an independent right of set-off.  Thus, the Trustee could not show BOTW received more on account of the Debt Payment than it would have received in a hypothetical Chapter 7 liquidation, in which the Debt Payment had not occurred.  (SJ Tentative at 3:16-6:9.)[2]

On August 15, 2013, BOTW filed a motion for attorneys' fees, which the Trustee opposed. (BOTW EOR, Tabs J-M.)  In support of its motion, BOTW asserted that it had a contractual right to attorneys' fees based on clauses contained in two Promissory Notes, a Commercial Security Agreement ("CSA"), and a Business Loan Agreement ("BLA") (collectively the "Governing Agreements"), which provide as follows:

**Promissory Notes**: ATTORNEYS' FEES; EXPENSES. Lender

---

[1]    *In re Tenderloin Health: E. Lynn Schoenmann v. Bank of the West*, 13-cv-03992-JSW and *In re Tenderloin Health: Bank of the West v. E. Lynn Schoenmann*, 13-cv-04585-JSW.

[2]    The Trustee filed a timely notice of appeal and elected to proceed before this Court. (BOTW EOR, Tabs I, K.)  On September 26, 2014, this Court affirmed the Bankruptcy Court's ruling on summary judgment.  (Affirmance Order at 4:10-5:28.)  The Trustee appealed the Affirmance Order to the United States Court of Appeals for the Ninth Circuit, and it remains pending before that court.

United States District Court
Northern District of California

may hire or pay someone else *to help collect this Note if Borrower does not pay*. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. Borrower also will pay any court costs, in addition to all other sums provided by law.

**Commercial Security Agreement**: Attorneys' Fees; Expenses. Grantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, *incurred in connection with the enforcement of this Agreement*. Lender may hire or pay someone else *to help enforce this Agreement*, and Grantor shall pay the costs and expenses *of such enforcement*. Costs and expenses include Lender's attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Borrower also shall pay all court costs and such additional fees as may be directed by the court.

**Business Loan Agreement**: Attorneys' Fees, Expenses. Borrower agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, *incurred in connection with the enforcement of this Agreement*. Lender may hire or pay someone else *to help enforce this Agreement*, and Borrow shall pay the costs and expenses *of such enforcement*. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Borrower also shall pay all court costs and such additional fees as may be directed by the court.

(BOTW EOR, Tab N, Tentative Ruling on Motion for Attorneys' Fees ("Fee Tentative") at 2:5-3:4 (emphasis added))[3]

Applying California law, the Bankruptcy Court determined that BOTW could not rely on the Promissory Notes to support its request for fees, because the Debtor had paid and because BOTW had not hired someone to collect the debt. The Bankruptcy Court also determined that the reference to bankruptcy proceedings in the fee clause defined "the scope of actions for which [BOTW] would be entitled to attorney's fees when 'collecting' on the note." The clause did not

---

[3]     The Governing Agreements can be found at BOTW EOR Tab C, Declaration of Lisa Lenherr, ¶¶ 3-4, Ex. A, BOTW Requests for Admissions 1-8 and exhibits A-D, Ex. B, Trustee Responses to Requests for Admissions 1-8.

United States District Court
Northern District of California

1  create an independent basis on which to recover fees.  (Fee Tentative at 4:21-5:19.)

2        The Bankruptcy Court also concluded that BOTW was not entitled to attorneys' fees based

3  on the CSA or the BLA, because the "plain meaning" of the fee clause in those agreements

4  implied "that it applies to actions brought to challenge, invalidate, or otherwise contest

5  Defendant's security interest."  (*Id.* at 5:25-27.)  Because the Trustee had not "dipute[d] the

6  nature, extent, or validity of [BOTW's] security interest in Debtor's personal property" and had

7  not "dispute[d] the amount or validity of" BOTW's claim, the Bankruptcy Court found that the

8  Adversary Proceeding "was not an action to enforce" either the CSA or the BLA.  (*Id.* at 5:27-

9  6:16.)  As with the Promissory Notes, the Bankruptcy Court found that the bankruptcy

10  proceedings clause served to define the scope of actions for which BOTW would be entitled to

11  fees incurred for enforcement of those two agreements.  (*Id.* at 5:20-6:11.)

12        Finally, the Bankruptcy Court stated that it did not believe any of the Governing

13  Agreements were ambiguous.  However, it found, in the alternative, that if the terms "collect" or

14  "enforce" were ambiguous, it would resolve any ambiguities against BOTW as the drafter of the

15  Governing Agreements.  (*Id.* at 6:12-7:4.)

16        BOTW filed a timely notice of appeal and elected to proceed before this Court.  (BOTW

17  EOR, Tabs P, Q.)  On appeal, BOTW argued that the Bankruptcy Court failed to recognize that its

18  affirmative defenses were "inextricably intertwined" with "enforcement" and "collection" and,

19  thus, gave rise to its right to attorneys' fees under the Governing Agreements.  The Court

20  remanded to the Bankruptcy Court for further proceedings because: (1) BOTW had not raised that

21  argument below; (2) the argument did not appear to be a settled proposition under California law;

22  and (3) the outcome of the motion could depend on how the broadly the Bankruptcy Court

23  construed the Governing Agreements.  (Remand Order at 5:9-27.)

24        On February 25, 2015, the Bankruptcy Court denied BOTW's motion for attorney's fees.

25  (BOTW EOR, Tab S, Order Following Remand.)  The Bankruptcy Court held that the assertion of

26  an affirmative defense could give rise to a claim for attorneys.  (Order Following Remand at 6:19-

27  7:3.)  It also held that BOTW's successful affirmative defense:

28            did not require "enforcement" of the [G]overning [A]greements,

United States District Court
Northern District of California

but rather, enforcement of its right to setoff, which existed independent of the relevant contracts. The Promissory Notes provide for attorneys' fees where Bank of the West hired counsel to "help collect [the notes] if [Debtor] does not pay." This did not occur, as the Debtor paid Bank of the West in full prior to the commencement of its bankruptcy case.

The outcome of this action does not turn upon the fact that Bank of the West prevailed upon an affirmative defense as opposed to a claim raised in a complaint. Rather, it depends upon whether the relevant attorneys' fees provisions were drafted broadly enough to permit an award of fees where the successful defense had nothing to do with enforcement of the governing agreement(s). This Court finds they were not.

(*Id.* at 7:27-8:14.)

BOTW filed a timely notice of appeal, and elected to proceed before this Court. (BOTW EOR, Tabs T, U.)

The Court shall address additional facts as necessary in its analysis.

## ANALYSIS

### A. Standard of Review.

[A district court may] affirm, modify, or reverse a bankruptcy judge's judgment, order or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of witnesses.

Fed. R. Bankr. P. 8013.

The Court reviews the Bankruptcy Court's findings of fact for clear error, and it reviews the Bankruptcy Court's conclusions of law *de novo*. *See In re Part-Helena-Corp.*, 63 F.3d 877, 880 (9th Cir. 1995); *see also In re Chen*, 345 B.R. 197, 200 (N.D. Cal. 2006) (citing *In re Jan Weilert RV, Inc.*, 315 F.3d 1192, 1196 (9th Cir. 2003)). The Court will not "disturb [the] bankruptcy court's award of attorneys' fees unless the bankruptcy court abused its discretion or erroneously applied the law." *In re Kord Enterprises, II*, 139 F.3d 684 (9th Cir. 1998).

### B. The Court Affirms the Decision.

BOTW argues that the Bankruptcy Court erred when it found that BOTW was not entitled to attorneys' fees. It is well established that, under the "American Rule," a prevailing party is not

1    entitled to an award of attorney's fees, unless those fees are provided for by statute or contract.

2    *See Travelers Casualty & Surety Company of America v. Pacific Gas & Electric Company*, 549

3    U.S. 443, 448 (2007).  Similarly, under California law, "[e]xcept as attorney's fees are specifically

4    provided for by statute, the measure and mode of compensation of attorneys and counselors at law

5    is left to the agreement, express or implied, of the parties[.]"  Cal. Code Civ. P. § 1021; *see also*

6    *Santisas v. Goodwin*, 17 Cal. 4th 599, 607 n.4 (1998) (noting that Section 1021 codifies the

7    "American Rule" regarding attorney's fees).[4]

8              **1.      The Affirmative Defense Issue.**

9              As a preliminary matter, the Court remanded, in part, because BOTW sought to invoke the

10   attorneys' fees clauses based on its assertion of an affirmative defense, an issue not addressed

11   below.  On remand, the Bankruptcy Court concluded that BOTW could rely on an affirmative

12   defense to invoke its rights to attorneys' fees.  In doing so, the court followed the reasoning of

13   *Windsor Pacific LLC v. Samwood Co., Inc.*, 213 Cal. App. 4th 263 (2013), *Mountain Air*

14   *Enterprises, LLC v. Sundowner Towers, LLC*, 231 Cal. App. 4th 805 (2014), *review granted*, 185

15   Cal. Rptr. 3rd 6, 344 P.3d 292 (2015), and Justice Armstrong's dissenting opinion in *Gil v.*

16   *Mansano*, 121 Cal. App. 4th 739 (2004).

17            In *Windsor*, the court held that "an attorney fee clause providing for a fee award to the

18   prevailing party in 'any action or proceeding to enforce or interpret' a contract applies not only

19   where the plaintiff's allegations in the complaint seek to enforce or interpret the contract, but also

20   where the defendant *seeks to do so* by asserting an affirmative defense raised in its answer."

21   *Windsor Pacific*, 213 Cal. App. 4th at 266 (emphasis added); *see also id.*, 213 Cal. App. 4th at

22   275.  That is, when an attorney fee clause permits recovery of fees in an action to "enforce or

23

24   _____

       [4]      California Civil Code section 1717 provides for a reciprocal right to attorney's fees and
25   allows a party to recover fees in an action on a contract.  However, BOTW does not rely on
       Section 1717 to support its request for fees.  BOTW argues that the Bankruptcy Court applied
26   Section 1717, rather than Section 1021, but the Court is not persuaded.  Rather, it concludes that
       the Bankruptcy Court's decision hinges on the finding that the Adversary Proceeding did not serve
27   to "enforce" the Governing Agreements.  This Court's conclusion is reinforced by the Bankruptcy
       Court's tentative ruling on the original fee motion, in which it clearly analyzed whether fees were
28   proper under Section 1021.  (Fee Tentative at 3:14-4:2.)

interpret" a contract, if a defendant raises an affirmative defense that also seeks to "enforce or interpret" the contract, the defendant will be entitled to fees.

Although neither party has challenged this aspect of the Bankruptcy Court's decision, given the manner in which the fee clauses are drafted, the Court finds the reasoning in *Windsor* persuasive.  Therefore, to the extent the Bankruptcy Court's decision rests on the conclusion that the assertion of an affirmative defense may, in some instances, support a request for attorney fees, the Court AFFIRMS, IN PART, on that basis.

**2.      Interpretation of the Attorneys' Fee Clauses.**

The Bankruptcy Court framed the issue on remand as follows: "[W]hether relevant case law requires this Court to interpret the attorneys' fee clauses at issue here broadly enough to justify an award of fees even where reference to the underlying contract is entirely unnecessary to resolve the action."  (Order on Remand at 5:5-8.)  BOTW argues that the Bankruptcy Court's decision is erroneous, because it failed to interpret the Governing Agreements.  The Court finds this argument unpersuasive.

The BLA and the CSA each provide for attorney fees "incurred in connection with the enforcement of this Agreement[.]"[5]  As set forth by the Bankruptcy Court, in order to determine if BOTW was entitled to fees, it was required to determine whether the affirmative defense of set-off served to enforce any of the Governing Agreements.  In order to interpret the terms of the Governing Agreements, the Court applies general principles of contract interpretation.  *Santisas*, 17 Cal. 4th at 608; *Windsor Pacific*, 213 Cal. App. 4th at 273.

> Under statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation.  Such intent is to be inferred, if possible, solely from the written provisions of the contract. The clear and explicit meaning of these provisions, interpreted in their ordinary and popular sense, unless used by the parties in a technical sense or a special meaning is given to them by usage, controls judicial

---

[5]      The Promissory Notes provide for attorney fees if BOTW hired someone "to help collect this Note if [Debtor] does not pay."  BOTW does not seriously press that its affirmative defense would fall within the scope of this clause.  Because it is undisputed that the Debtor *did* pay its debt under the Note, the Court concludes that the Bankruptcy Court correctly found that BOTW could not seek fees based on the fee clauses contained in the Promissory Notes, and it AFFIRMS, in part, on that basis as well.

United States District Court
Northern District of California

> interpretation.  Thus, if the meaning a layperson would ascribe to
> contract language is not ambiguous, we apply that meaning.

*Santisas*, 17 Cal. 4th at 608 (internal citations and quotations omitted); *see also* Cal. Civ. Code §§ 1636, 1638, 1639, 1644.

BOTW argues that, if the Trustee had succeeded on the preference claim to avoid the Escrow Payment, the result would have been to "unwind the Debtor's contractual performance of payment of the Notes."  (BOTW Brief at 17:7-9.)  Thus, according to BOTW, the practical effect of its affirmative defense is "a contention that the Debtor's contractual performance was proper, the debt owed was valid, and the Escrow Payment cannot be 'undone' by the Bankruptcy Code's strong arm powers," *i.e.,* it sought to "enforce" the Governing Agreements.  (*Id.* at 17:12-15.)

In support of this argument, BOTW relies, in part, on *In re Mac-Go*, No. 14-44181 CN, 2015 WL 1372717 (N.D. Br. Mar. 20, 2015).  In *In re Mac-Go*, the trustee sought relief under 11 U.S.C. sections 547, 548 and 549, to recover payments made by the debtor to First National Bank ("FNB").  *Id.*, 2015 WL 1372717, at *1.  After it prevailed in the adversary proceeding, FNB filed a proof of claim, which included attorneys' fees incurred in the adversary proceeding.  *Id.*  To support its request, FNB relied on its loan agreements with the debtor, each of which contained attorneys' fee clauses that are identical to the attorneys' fee clauses in the Governing Agreements.  *Id.*, 2015 WL 1372717, at *2.[6]

The bankruptcy court concluded that the trustee's fraudulent conveyance claims "did not directly question the validity of the" agreements.  However, it found that FNB's defense against those claims "was premised" on their validity.  Specifically, FNB argued that its promissory note and business loan agreement with the debtor, of which the trustee appeared to be unaware, were valid and enforceable and required the debtor to make the payments at issue.  *Id.*, 2015 WL 1372717, at *4.  A "transfer [that] constitutes repayment of the debtor's antecedent or present debt" is not constructively fraudulent."  *Id.*  The *In re Mac-Go* court reasoned that FNB's defense,

---

[6]     The Trustee argues that the *In re Mac-Go* "decision is based on cases which are clearly distinguishable from the fee provisions and claims at issue here," although she has not attempted to distinguish the case itself.  (Trustee Brief at 14 n.1.)

United States District Court
Northern District of California

1  which utilized the agreements "in order to retain [the allegedly preferential] payments is the

2  functional equivalent of relying on these documents to pursue a collection action. Both should

3  qualify as the 'enforcement' of the [agreements]." *Id.*, 2015 WL 1372717, at *4.

4      The court also concluded that FNB could recover fees for defending against the preference

5  claims, because in order to show it was fully secured when it received the disputed payments,

6  FNB had to "establish that it had (at the relevant times) a perfected security interest in [the

7  debtor's] collateral, the value of which was equal to or exceeded the amount due under the

8  [debtor's] loan." *Id.*, 2015 WL 1372717, at *6. Again, because FNB had to rely on the

9  agreements to establish "the bonafides of its secured claim," the court concluded that its defense to

10 the preference claim was the functional equivalent of "enforcing" the agreements. *Id.*

11     To support its reasoning, the *In re Mac-Go* court relied on a number of cases which it

12 interpreted as standing for the proposition that "using a contract provision as a defense to a tort

13 litigation is akin to enforcing the contract's terms." *See In re Mac-Go*, 2015 WL 1372717, at *5

14 (citing *Finalco, Inc. v. Roosevelt*, 235 Cal. App. 3d 1301 (1991)). For example, the court relied on

15 the *Windsor* case, *supra*, in which the plaintiff filed suit to establish a prescriptive easement on the

16 defendant's property. The court found that the plaintiff was equitably estopped from asserting a

17 prescriptive easement, because the parties had executed an "Agreement Regarding Easement,"

18 which prevented the plaintiff from demonstrating that its use of the property was adverse.

19 *Windsor*, 213 Cal. App. 4th at 272-73. The court also found that the defendant was contractually

20 entitled to attorneys' fees, because it "was necessary" to interpret the agreement to rule on the

21 equitable estoppel issue. *Id.* at 274.

22     In the *Finalco* case, the plaintiff sued the defendant to obtain the balance due on a

23 promissory note, and the defendant filed a cross-complaint based on alleged violations of federal

24 and state securities law, the Racketeering Influenced and Corrupt Organizations Act, common law

25 fraud, and misrepresentation. *Id.* The trial court awarded the plaintiff attorneys' fees for

26 prosecuting its action on the promissory note and for the fees it incurred in defending against the

27 counterclaim. That ruling was based on a clause in the promissory note that provided that the

28 defendant agreed "to pay all costs of collection … including, without limitation, all attorney's fees

1  and expenses and court costs." *Id.* at 1306 (ellipses in original).

2      The court of appeal rejected the defendant's argument that the fee clause should be limited

3  to costs that the plaintiff incurred in proving up its case and affirmed the fee award.  It stated that

4  "California law is settled that a borrower's obligation to pay attorneys' fees incurred in the

5  collection of the note includes attorneys' fees incurred in defending against a challenge to *the*

6  *underlying validity* of the obligation." *Id.* at 1308 (emphasis added).  The court reasoned that the

7  plaintiff's defenses to the cross-complaint were "not 'incidental' to the prosecution … to recover

8  on the note." *Id.* at 1307.  Rather, because the defendant sought to rescind his obligation to the

9  plaintiff, "[n]ot only was [the plaintiff] obligated to file a complaint to recover on the note, it was

10 obliged to defend against [defendant's] allegations of securities fraud in order to succeed on its

11 complaint." *Id.* at 1307.

12      The *In re Mac-Go* court also cited to and relied on *Siligo v. Castellucci*, 21 Cal. App. 4th

13 873 (1994).  In that case, the parties settled a dispute over the sale of property, which included a

14 general release.  The defendant subsequently stopped performing obligations under the parties'

15 renegotiated agreement, and the plaintiff filed suit.  The defendant asserted fraud as an affirmative

16 defense and filed a counterclaim premised on fraud.  The plaintiff defeated the affirmative defense

17 and the counterclaim by way of the release in the prior settlement.  *Id.* at 876.  The plaintiff sought

18 to recover his attorneys' fees for both the prosecution of the breach of contract action and his

19 defense of the fraud claim.  According to the *Siligo* court, "the pivotal point in the analysis

20 whether a prevailing party is entitled to recover contractual attorney fees for defending against a

21 competing noncontractual claim . . .  is  . . . whether a defense against the noncontractual claim is

22 *necessary* to succeed on the contractual claim." *Id.* at 879 (emphasis added).

23      The court rejected the defendant's argument that the cross-complaint did not seek to

24 rescind "or otherwise attack the enforceability" of the agreements as "superficial." *Id.*  Rather, it

25 found that the plaintiff "was required to defend against fraud in order to succeed on his complaint

26 to enforce the agreements.  The practical success of [plaintiff's] defense was the enforceability of

27 the agreements." *Id.* at 880; *see also Wagner v. Benson*, 101 Cal. App. 3d 27, 37 (1980) (court

28 deemed defense against claim of fraud "necessary" to efforts to collect on notes and fees should

United States District Court
Northern District of California

1   have been awarded for those efforts).

2   　　　　BOTW also relies on *MRW, Inc. v. Big-O-Tires, LLC,* 684 F. Supp. 2d at 1205 (E.D. Cal.

3   2010).  There, the court found that the plaintiffs' claims for fraud in the inducement "sought, in

4   essence, to escape the contract."  *Id.* at 1205.  As in the *Finalco* and *Siligo* cases, the court found

5   that the "defense of these claims *was necessary* to enforcement of" an agreement that contained an

6   attorney fee clause providing for fees that a party incurred "to enforce this Guarantee."  *Id.*, at

7   1203, 1205 (emphasis added).

8   　　　　As in the *In re Mac-Go* case, the Trustee did not directly dispute the validity of any of the

9   Governing Agreements.  However, it does not appear that FNB relied on a set-off defense to

10  prevail on the preference claim, which distinguishes this case from *In re Mac-Go.*  BOTW argues

11  that the Court should follow the reasoning in *In re Mac-Go,* because the Governing Agreements,

12  specifically the CSA, establish its right to a set-off.  However, the lesson this Court draws from

13  each of the cases on which the *In re Mac-Go* court relied is that the prevailing party did not simply

14  refer to the fact that a contract containing a fee clause existed, in order to prevail on an affirmative

15  defense.  Rather, either it was necessary to prevail on the affirmative defense to show the

16  underlying agreement or obligation was valid or the prevailing party sought to enforce a particular

17  term of the agreement containing the fee clause.

18  　　　　As the Bankruptcy Court recognized, that is not the case here, where BOTW's right of set-

19  off is a right that it is independent of the Governing Agreements.  To the extent the *In re Mac-Go*

20  court found that the existence of the security agreement was sufficient to give FNB the right to

21  attorneys' fees, the Court finds its reasoning unpersuasive.  *Cf. In re Davison*, 289 B.R. 716, 725

22  (9th Cir. B.A.P. 2003) (holding that debtor was not entitled to receive fees under Section 1021,

23  where "in finding no fraud by Debtor, the bankruptcy court was not enforcing or interpreting the

24  terms" of contract that contained fee clause).

25  　　　　Accordingly, the Court affirms the decision.

26  　　　　　　　　　　　　　　　　**CONCLUSION**

27  　　　　For the foregoing reasons, the Court AFFIRMS the Bankruptcy Court's decision to deny

28  BOTW's motion for attorneys' fees.

United States District Court
Northern District of California

11

1      The Court shall enter a separate judgment, and the Clerk shall close the file.

2      **IT IS SO ORDERED.**

3  Dated: November 12, 2015

JEFFREY S. WHITE
United States District Judge